**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAs) PRODUCTS LIABILITY LITIGATION**<br><br>IRENE N. MERCER,<br><br>Plaintiff,<br><br>v.<br><br>NOVO NORDISK INC. and NOVO NORDISK A/S,<br><br>Defendants. | **MDL NO. 3094**<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON<br><br>**COMPLAINT AND JURY DEMAND**<br><br>CIVIL ACTION NO.: ________________ |

**SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff named below, by and through the undersigned counsel, files this **Short-Form Complaint and Demand for Jury Trial** against the Defendants selected below. Plaintiff adopts and incorporates by reference the allegations, claims, and the relief sought in **Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")** and any subsequent amended versions of such Master Complaint, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff files this **Short-Form Complaint** as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

**IDENTIFICATION OF PARTIES**

**Plaintiff(s)**

1. Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s): **Irene N. Mercer.**

2. If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim: **Not applicable.**

3. If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s): **Not applicable.**

4. If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services: **Not applicable.**

**Defendant(s)**

5. Plaintiff is suing the following Defendant(s) (check all that apply):
   __X__ Novo Nordisk Inc.
   __X__ Novo Nordisk A/S
   _____ Eli Lilly and Company
   _____ Lilly USA, LLC
   _____ other(s) (identify): ________________________________________

**JURISDICTION AND VENUE**

6. City and state of Plaintiff's current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence): **Gibbon, Nebraska.**

7. State where Plaintiff/Decedent was prescribed the GLP-1 RA Product(s) at issue: **Nebraska.**

8. State of Plaintiff's/Decedent's residence at time of their use of the GLP-1 RA Product(s) at issue: **Nebraska.**

9. City and state of Plaintiff's/Decedent's residence at time of diagnosis of injury: **Gibbon, Nebraska.**

10. Jurisdiction is based on:
    __X__ diversity of citizenship pursuant to 28 U.S.C. § 1332
    _____ other (plead in sufficient detail as required by applicable rules):
    ______________

11. The District Court(s) where Plaintiff might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered: **United States District Court for the District of Nebraska.**

12. Venue is proper in the District Court identified in Paragraph 11 because:
    __X__ a substantial part of the events and omissions giving rise to Plaintiff's claims occurred there
    _____ other (plead in sufficient detail as required by applicable rules):
    ______________

13. If applicable, identify the citizenship of any additional Defendant(s) named above: **Not applicable.**

**PRODUCT USE**

14. Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):
    __X__ Ozempic (semaglutide)
    _____ Wegovy (semaglutide)
    _____ Rybelsus (oral semaglutide)

_____ Victoza (liraglutide)
_____ Saxenda (liraglutide)
_____ Trulicity (dulaglutide)
_____ Mounjaro (tirzepatide)
_____ Zepbound (tirzepatide)
_____ Other(s) (specify): ________________________________________

15. To the best of Plaintiff's knowledge, Plaintiff/Decedent used GLP-1 RA Product(s) during the following approximate date range(s): **Ozempic (semaglutide) injection: approximately June 2021 through at least February 2024.**

## INJURIES AND DAMAGES

16. To the best of Plaintiff's knowledge, as a result of using GLP-1 RA Product(s), Plaintiff/Decedent suffered the following injuries, including their sequelae (check all that apply):

_____ Gastroparesis
__X__ Other gastro-intestinal injuries (specify) **nausea, vomiting (including dark brown and black emesis), abdominal pain, and abdominal distension associated with recurrent small bowel obstruction, and the sequelae thereof, including two hospital admissions in October and November 2023 requiring nasogastric tube decompression, bowel rest, and intravenous fluids.**
_____ Ileus
_____ Ischemic Bowel/Ischemic Colitis
__X__ Intestinal Obstruction
_____ Necrotizing Pancreatitis
_____ Gallbladder Injury (specify) ____________________
_____ Micronutrient Deficiency
_____ Wernicke's encephalopathy
_____ Aspiration
_____ Death
_____ Additional/Other(s) (specify): _________________________________

17. Plaintiff's/Decedent's injuries occurred in approximately (month and year): **October 2023 (onset of nausea, vomiting, and abdominal pain; small bowel obstruction diagnosed on October 22, 2023); November 2023 (recurrent small bowel obstruction diagnosed on November 7, 2023).**

18. In addition, as a result of Plaintiff's/Decedent's use of GLP-1 RA Product(s), Plaintiff suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):

__X__ Injury to self
_____ Injury to person represented
__X__ Economic loss
_____ Wrongful death
_____ Survivorship

_____ Loss of services
_____ Loss of consortium
_____ other(s) (specify): ____________________________________________

**CAUSES OF ACTION**

19. In addition to adopting and incorporating by reference the Master Complaint as stated above, more specifically, Plaintiff hereby adopts and incorporates by reference the following Causes of Action and allegations asserted in the Master Complaint (check all that apply):

__X__ Count I: Failure to Warn – Negligence
__X__ Count II: Failure to Warn – Strict Liability
__X__ Count III: Breach of Express Warranty/Failure to Conform to Representations
__X__ Count IV: Breach of Implied Warranty
__X__ Count V: Fraudulent Concealment/Fraud by Omission
__X__ Count VI: Fraudulent/Intentional Misrepresentation
__X__ Count VII: Negligent Misrepresentation/Marketing
__X__ Count VIII: Strict Product Liability Misrepresentation/Marketing
__X__ Count IX: Innocent Misrepresentation/Marketing
_____ Count X: Unfair Trade Practices/Consumer Protection (see below)
__X__ Count XI: Negligence
__X__ Count XII: Negligent Undertaking
_____ Count XIII: State Product Liability Act (see below)
_____ Count XIV: Wrongful Death
_____ Count XV: Loss of Consortium
_____ Count XVI: Survival Action
__X__ Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules): **Counts V and VI: see Attachment "A" (Fraud Supplement).**

20. If Plaintiff is asserting a claim pursuant to the unfair trade practices or consumer protection statutes of any jurisdiction as identified in Count X above:

a. Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims: **Not applicable. Plaintiff does not assert a claim under Count X.**

b. Identify the factual allegations supporting those claims (by subsection, if applicable): **Not applicable.**

** Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21. If Plaintiff is asserting a claim pursuant to the Product Liability Act ("PLA") of any jurisdiction as identified in Count XIII above: **Not applicable. Plaintiff is a citizen of Nebraska, which has not enacted a Product Liability Act subsuming product-liability**

**claims. See Master Complaint ¶ 906. Plaintiff therefore does not assert a Count XIII claim and instead asserts the individual causes of action checked in Paragraph 19 above.**

** Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22. If pre-suit notice is required by statute, did Plaintiff provide some form of separate pre-suit notice to Defendant(s)? **No. Plaintiff did not provide separate pre-suit notice. To the extent notice of breach of warranty is required under Neb. U.C.C. § 2-607(3)(a), Defendants had actual knowledge of the defects alleged herein, and this Short Form Complaint provides such notice.**

## RELIEF

Plaintiff prays for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the Master Complaint, as appropriate, and any additional relief to which Plaintiff may be entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims triable by jury in this action.

Dated: September 24, 2026

Respectfully submitted,

FARR LAW FIRM, P.A.

/s/ George T. Williamson
George T. Williamson,
FL Bar No. 85585
99 Nesbit Street
Punta Gorda, FL 33950
Telephone: (941) 639-1158
Email: gwilliamson@farr.com

*Attorney for Plaintiff*

**ATTACHMENT "A"**
**FRAUD SUPPLEMENT (COUNTS V & VI)**

1. Plaintiff incorporates by reference the factual allegations in the Master Complaint, including its paragraphs 721-779 (Count V) and 780-800 (Count VI), together with paragraphs 53-55 (ileus and intestinal obstruction), 105-110 (regulatory history of Ozempic), 153-224 (Defendants' notice of the association between GLP-1 RAs and gastroparesis, ileus, intestinal obstruction, and their sequelae), 252-418 (Defendants' marketing and promotion, including off-label promotion), and 419-603 (Defendants' failure to warn and deceptive marketing), as though set forth fully at length herein.

2. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Product (Ozempic (semaglutide)) used by Plaintiff.

3. At all relevant times, Defendants had a duty to accurately and truthfully represent the known risks and benefits of their GLP-1 RA Products to Plaintiff and her prescribing physicians.

4. Defendants knew or should have known that their GLP-1 RA Products, including Ozempic, were unreasonably dangerous and caused gastrointestinal adverse effects, including intestinal obstruction, ileus, and gastroparesis, of a greater severity, intensity, frequency, and duration than represented.

5. Defendants knew their representations regarding the drugs' safety, efficacy, and side-effect profile were material to the decisions of patients and prescribers.

6. Despite this knowledge, Defendants intentionally and knowingly made false and material misrepresentations and concealed material facts with the intent to mislead and induce Plaintiff and her prescribing physicians to use and prescribe the GLP-1 RA Products.

7. Defendants, having a duty to disclose, intentionally concealed and omitted the following material facts, thereby creating a false and misleading impression of the GLP-1 RA Products upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

   a. Risk of Severe Gastrointestinal Injuries: Concealing the true risk of severe, persistent, and debilitating gastrointestinal conditions caused by Ozempic and Defendants' other GLP-1 RA Products, including intestinal (bowel) obstruction, ileus, and gastroparesis (delayed gastric emptying).

   b. Inadequate Gastric Emptying Testing: Concealing that Defendants' representations of a "minor" or "mild" delay in gastric emptying were based on inadequate testing (including the acetaminophen absorption test, which measures only the emptying of liquids), and that Defendants knew or should have known that such testing did not reflect the drug's true effect on the emptying of solid food.

   c. Misleading Clinical Trial Data: Concealing that clinical trial participants were frequently treated with anti-emetic medications to manage gastrointestinal side effects, thereby skewing the data and rendering the "mild to moderate" and "transient" side-effect

profile reported in Defendants' labeling and marketing materials false and misleading, and concealing that Defendants performed research, testing, and post-market surveillance in a manner that would lead to under-reporting of the severe gastrointestinal risks of the GLP-1 RA Products.

d. Label Omission: Concealing that, at all relevant times, including when Plaintiff was prescribed and used Ozempic from 2021 through 2023, the "Warnings and Precautions" section of the Ozempic Prescribing Information, and the Ozempic Medication Guide, contained no warning or precaution concerning intestinal obstruction, ileus, or gastroparesis, notwithstanding Defendants' knowledge of reasonable evidence of an association between semaglutide and those conditions. See Master Complaint ¶¶ 153-224, 447.

e. "Bogus" Weight-Loss Claims: Concealing that patients are highly likely to regain the weight after discontinuing the drug, that maintaining any weight loss requires lifelong, continuous use of the medication, and that a significant portion of the total weight lost is often lean muscle mass, not fat, which can lead to negative health outcomes.

8. Defendants made the following affirmative and material misrepresentations, which were false when made and upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a. Defendants made representations in widespread direct-to-consumer advertising for their semaglutide products, including television commercials and product websites for Ozempic and Wegovy, that patients would lose weight and could "lose weight and keep it off," and, in the case of Ozempic, promoted weight loss as a benefit even though Ozempic is not approved for weight loss. These representations were false and misleading because Defendants knew and concealed the material facts that (1) patients are highly likely to regain the weight after discontinuing the drug, requiring lifelong use, and (2) a significant portion of the weight lost is often unhealthy lean muscle mass.

b. Defendants made misrepresentations to the public and to Plaintiff through their semaglutide advertising campaign, including the widespread "Oh, Oh, Oh, Ozempic" ("Magic") television commercial, which stated that "you may lose weight" and that "adults lost on average up to 12 pounds," see Master Complaint ¶ 350, and which falsely created a misleading impression of the safety profile of Ozempic. While the commercial mentioned common gastrointestinal side effects such as nausea and vomiting, it intentionally minimized those risks by failing to disclose the severe, persistent, and debilitating nature of those symptoms, and it concealed and omitted all mention of serious adverse events that Defendants knew or should have known to be associated with semaglutide, including intestinal obstruction, ileus, and gastroparesis. These omissions created a deceptive net impression intended to induce consumers to request Ozempic.

c. Defendants made representations to Plaintiff's prescribing physician through sales representatives, medical websites (including NovoMedLink, whose Ozempic pages omitted any reference to or warning of intestinal obstruction, ileus, or gastroparesis, see Master Complaint ¶ 602), and other physician-directed marketing that the most common

gastrointestinal side effects of Ozempic, such as nausea and vomiting, were "mild to moderate" in severity and "transient" or of short duration. These representations were false and misleading because Defendants concealed that these side effects were often severe, debilitating, and persistent, that Ozempic could cause intestinal obstruction and ileus, and that Defendants' clinical trial data was skewed by the undisclosed use of anti-emetic medications.

9. Plaintiff Irene N. Mercer is a resident of Gibbon, Nebraska. On June 7, 2021, Plaintiff's primary care physician, Bradley D. Rodgers, M.D., of Kearney, Nebraska, started Plaintiff on Ozempic (semaglutide), injected subcutaneously once weekly and maintained at 0.5 mg weekly, for type 2 diabetes, after Plaintiff asked to switch to semaglutide because she had seen it advertised on television. Plaintiff filled her Ozempic prescriptions at a Walgreens pharmacy in Kearney, Nebraska, beginning on July 15, 2021, and continued to use Ozempic, as prescribed by Dr. Rodgers and his practice, through at least February 2024. Plaintiff last refilled Ozempic before her injury on October 15, 2023. On October 19, 2023, while using Ozempic, Plaintiff presented to the emergency department at CHI Health Good Samaritan with nausea and vomiting, including dark emesis, and diarrhea followed by constipation. On October 22, 2023, she returned to the emergency department with repeated episodes of dark brown and black emesis, generalized abdominal pain, and abdominal distension. A CT scan of the abdomen and pelvis showed the interval development of a small bowel obstruction, with multiple fluid-filled, dilated loops of jejunum, air-fluid levels, a possible transition point in the right mid-abdomen, and upstream dilation of the duodenum and stomach. Plaintiff was admitted to the hospital, where a nasogastric tube was placed for gastric decompression and more than a liter and a half of gastric contents was removed, and she was treated with bowel rest, nothing by mouth, and intravenous fluids until her discharge on October 26, 2023. On November 7, 2023, Plaintiff was readmitted to CHI Health Good Samaritan with a recurrent small bowel obstruction, with CT findings of fluid- and gas-distended loops of small bowel consistent with at least a partial small bowel obstruction, and was again treated with nasogastric tube decompression, bowel rest, and intravenous fluids until her discharge on November 10, 2023. At no time before or during Plaintiff's use of Ozempic did Defendants disclose to Plaintiff or her prescribing physician that Ozempic could cause intestinal obstruction or ileus.

10. Upon information and belief, Plaintiff's prescribing physician justifiably relied on Defendants' misrepresentations to the medical community, including the false representations that the gastrointestinal side effects of Ozempic were merely "mild to moderate" and "transient," and the omission of any warning concerning intestinal obstruction, ileus, or gastroparesis from the Ozempic warnings and precautions and physician-directed marketing. In parallel, Plaintiff justifiably relied on Defendants' widespread direct-to-consumer advertising for their semaglutide products, which represented that those products were a safe and effective means of losing weight with only minor and temporary side effects. Plaintiff asked her physician to switch her to semaglutide in June 2021 because she had seen it advertised on television. Relying on this false and misleading net impression, Plaintiff's physician was induced to prescribe Ozempic and Plaintiff was induced to take it.

11. Had Defendants disclosed the true risk of intestinal obstruction, ileus, and other severe gastrointestinal injury, the inadequacy of their safety testing, and the true, qualified nature of

the weight-loss benefits, Plaintiff would not have used Ozempic, and/or Plaintiff's prescribing physician would not have prescribed it.

12. As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in severe and personal injuries, physical pain, mental anguish, diminished enjoyment of life, as well as the need for future medical treatment and other damages, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

13. As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and consequent economic and other losses, including pain and suffering, loss of a normal life, medical expenses, lost income and disability, and is entitled to recover compensatory damages and, to the extent permitted by applicable law, exemplary and/or punitive damages.